LANDRIEU, J.,
DISSENTS
|SI respectfully dissent from the opinion of the majority. I find that the State Registrar had no statutory authority, either under the current law or under the law as it existed at the time of these adoptions, to issue new birth certificates for these three plaintiffs, who were adopted by notarial act after each had attained the age of majority. For reasons explained more fully below, I would reverse the judgment of the trial court and grant the writ of mandamus directing the State Registrar to restore the birth certificates of all three plaintiffs to their original form and content, and directing the Registrar to strike the altered birth certificates from the vital records.
Steven and Sol Grisham were born to their father, Sydney (a/k/s Schaje) Wolf Grisham and their mother, Barbara Winn, in 1957 and 1959, respectively. After their parents divorced, Mr. Grishman married Carole Hartman. Ms. Hartman had one child, Marylynn Wesson Daniels, born in 1956, whose father is Howard McKinnon *1041 Daniels, Jr. Soon after Steven, Sol and Marylynn each attained the age of majority, a notarial act of adoption was executed resulting in each of the boys being adopted by their step-mother, Ms. Hartman, and Marylynn being adopted by her step-father, Mr. Grishman. These notarial acts were executed on December 10, |91974 (Marylynn); April 22, 1976 (Steven); and November 20, 1978 (Sol). Sometime after execution, each act was presented to the Office of Vital Records, which issued new birth certificates containing the adoptive parent’s name instead of the birth parent’s name. The revised birth certificates of the boys reflect that their mother is Carole Medora Hartman. Their birth names are not changed in any way. Marylynn’s revised birth certificate indicates that her father is Schaje Wolf Grishman, and her name is changed from Marylynn Medora Daniels to Marylynn Medora Grishman.[1]
There is no question that the current law, which has been substantially the same since 1979, prohibits the State Registrar from making changes to original birth certificates and/or issuing new ones in cases such as those presented here.
The law relative to the adoption by notarial act of those over the age of seventeen is provided for in La. R.S. 9:465. The law relative to the adoption of children (those under the age of seventeen) is contained in Title XII of the Louisiana Children’s Code. The manner in which the original birth certificates of all adoptees (children and adults) are recorded and/or amended following an adoption and the duty of the Registrar are governed by our laws relative to Vital Statistics. See, La. R.S. 40: 72-79. These vital statistic laws have remained substantially the same but have been re-arranged and re-numbered on numerous occasions over the years. I will first discuss current law, and will then turn to the law at the time of the adoption of each of the plaintiffs.
La. R.S. 40:75, entitled “Adult adoption; name changes” currently provides, in pertinent part:
A. Adult adoptions and name changes resulting from the adoptions pursuant to R.S. 9:465 shall have no effect on birth certificates maintained by the Vital Records Registry, except that when a name change is effected pursuant to R.S. 9:465 and an affidavit is presented Imfrorn the district attorney of the parish or place of residence of the requesting party indicating that there is no objection of the district attorney to the adop-tee’s name change along with a certified copy of the notarial act of adoption and the appropriate fee, the registrar of vital records shall prepare a new' birth certificate to reflect the new name....
B. In such cases, the validity and civil effects of the notarial act of adoption are in no way affected and shall continue to be governed by the laws applicable thereto.
La. Rev. Stat. Ann. § 40:75 (Emphasis added).
This statute makes it clear that under the current law, the State Registrar is not authorized to issue a new birth certificate in an adult adoption by notarial act except when there is a request that the name of the adoptee be changed and the Registrar is presented with an affidavit of the district attorney indicating he has no objection to the name change. Of the three acts of adoption presented here, only Maryl-ynn’s notarial act provided that her name would be changed; the names of the two male plaintiffs were not changed, either in their notarial acts of adoption or on their new birth certificates. Marylynn’s last *1042 name was changed on her new birth certificate from Daniels to Grishman, although there is no evidence of an affidavit from any district attorney approving such a name change.[2] Even when the requirements for changing an adoptee’s name have been met and a new birth certificate can be issued, however, La. R.S. 40:75 does not allow for the names of the adop-tee’s parents to be changed. Accordingly, under current law, the Registrar was without authority to alter the birth certificates of the three plaintiffs’ in this case and place their original certificates under seal.[3]
In its written Reasons for Judgment, the trial court framed the issue before it as follows: “[Wjhether the Office of Vital Records, based upon the documents it received and reviewed—namely the Notarial Acts of Adoption—had the legal | n authority to alter plaintiffs’ birth certificates. This issue turns on what the law was at the time of the adoptions.” (Emphasis added).[4] The trial court determined that at the time of Marylynn and Steven’s adoptions (1974 and 1976), the applicable law was found in La. R.S. 40:201, and at the time of Sol’s adoption (1978), the applicable law was found in La. R.S. 40:75, which had the same provisions as the former La. R.S. 40:201, but had, in the interim, been renumbered.[5] The trial court then concluded that these statutes authorized the Office of Vital Records, when presented with a notarial act of adoption, to “make a record showing the date of birth of the person adopted; the new name of the person adopted if his name was changed in accordance with the law; and the names and addresses of the adoptive parents.” I find that neither of these provisions applies in the circumstances presented here.
La. R.S. 40:201, as it existed from 1965 until 1976, and La. R.S. 40:75, as it existed from the reorganization of Louisiana’s vital statistics laws in 1976 through 1979, were each entitled “Record of adoptions prior to July 27,1938.” Each provided for the making of such a record only “[w]hen any person, who adopted prior to July 27, 1938... presents the original or a certified copy of the birth certificate of the adopted person and a certified copy of a final judgment decreeing the adoption or the notarial act of adoption....” None of the three plaintiffs were adopted prior to 1938. At the time of their adoptions between 1974 and 1978, the law was silent as to the effect an act of notarial adoption had on the vital records. Indeed, the State Registrar was unable to direct the trial court or this court to any statute, either currently in effect or in existence at the relevant time, which would 112have granted his agency the authority to alter the birth certificates of these plaintiffs.
Devin George, the State Registrar at the time of trial, testified that, prior to 1983, it was the practice of his agency to issue new birth certificates with the adoptive parents’ names in cases of adult adoptions by notarial act (just as the agency *1043 did in adoptions of children). Mr. George could not identify a specific statute that authorized this practice for adult adoptions; he acknowledged, however, that it would be error for the Registrar to alter birth certificates without statutory authorization. Mr. George further testified that the agency stopped altering the birth certificates in adult notarial adoptions in 1983 because the legislature passed a law that prohibited the agency from doing so.[6]
A review of the legislative history indicates that from 1974-1978, when these adoptions occurred, there was no statutory provision that addressed the handling of vital records in adult adoptions by notarial act. There was however, a provision for the handling of vital records in adoptions that had occurred prior to July 7, 1938. From 1974-1976, that provision was La. R.S. 40:201. In 1976, the legislature re-numbered the vital records statutes, at which time La. R.S. 40:201 became La. 40:75.[7]
In 1979, the legislature enacted, for the first time, a provision addressing the handling of vital records in adult adoptions by notarial act. They placed this provision in La. R.S. 40:75 and moved the former substance of that statute (dealing with adoptions prior to July 27, 1938) into La. R.S. 40:72, where it remains today.[8] The trial court erred here by applying La. R.S. 40:201 and its successor, La. R.S. 40:75, to these adoptions.
h3When first enacted, the 1979 version of La. R.S. 40:75 provided only that when a person over the age of seventeen is adopted by notarial act in which the adop-tee’s name is changed, the adoptee could request the Office of Vital records to issue a new birth certificate in his new name, but the request had to be accompanied by an affidavit from the pertinent district attorney stating that he had no objection to the name change. There was no authority for the Registrar to issue an amended birth certificate changing the names of the adoptee’s parents. Then, in 1983, La. R.S. 40:75 was amended to include this sentence: “A new birth certificate shall not be originated based upon a notarial act of adoption.”[9] The testimony of Mr. George indicates that it was this amendment that prompted the Office of Vital Records to stop its former practice of routinely issuing new birth certificates in cases of adult adoptions.
As there was, quite simply, no authority in the law at the time these plaintiffs’ birth records were changed for the Office of Vital Records to have so changed them, the trial court committed legal error by declining to grant the petition for a writ of mandamus ordering the State Registrar to restore the birth records to their original state.
The plaintiffs petition seeks only to have their birth records restored, not to have their adoptions annulled.[10] However, *1044 as noted by the majority, the plaintiffs did present evidence at trial to show that their adoptions were procured by fraud or coercion, .and each plaintiff denied having validly consented to his or her notarial | Mact of adoption. In its written reasons for dismissing the plaintiffs’ claims, the trial court stated:
The Office of Vital Records is not required to delve into the circumstances surrounding the signatures on the documents presented to them. Rather, the Office of Vital Records can only review the records submitted to determine if on their face, they meet the requisites of law needed to alter a birth certificate. In this case, all three of the Acts of Adoption appeal’ proper on their face. Therefore, they were accepted by [the] Office of Vital Records and plaintiffs’ birth certificates were altered.”
The plaintiffs do not dispute the facial validity of the notarial acts of adoption, only the Registrar’s authority to issue new, altered birth certificates based upon these acts. In the alternative to their argument that the Registrar lacked any legal authority to change the birth certificates based upon the notarial acts of adoption, the plaintiffs contended in the trial court that their adoptions were not valid due to fraud. Nevertheless, the plaintiffs did not seek any remedy other than the restoration of their birth certificates.
As the trial court did not rule upon the validity of the adoptions, that issue is not properly before us. I therefore make no finding with regard to whether or not the adoptions are valid, whether the Office of Vital Records would be a proper defendant to a nullity action, or whether the trial court had all the necessary parties before it to consider such an action. The record does not support a finding that the plaintiffs were pursuing a nullity action. Whether they were or were not, their adoptions need not be declared null for them to obtain the relief they seek.
For these reasons, I would reverse the judgment of the trial and grant the writ of mandamus.

. The original birth records of all three plaintiffs were under seal until the trial court ordered that they be produced for these proceedings.

. Marylynn testified that she never used the last name of Grishman.

. The law regarding the duty of the Registrar in adult adoptions by notarial act is in clear contrast to the law regarding its duty relative to the adoption of children. In the latter instance, the law provides for the making of a "new certificate of live birth,” allows for the recording of the names of the adoptive parents, and provides for the sealing of the original birth certificate. See La. R.S. 40:79.

. Neither the plaintiffs nor the Registrar address whether the current law should be applied retroactively or whether the law at the time of the adoptions controls. Because I find that both current law and the law at the time of the adoptions demand the same result, I do not address that issue.

. See Act 352 of 1976.

. See Act 491 of 1983, explained more fully infra.

. See Act 352 of 1976.

. See Act 776 of 1979.

. See Act 491 of 1983, referred to in footnote 6, supra. Interestingly, this sentence was then removed from the statute in 1991, possibly because it could have been read as prohibiting the Registrar from issuing new birth certificates in the case of a valid request for a name change of the adoptee. See Act 630 of 1991.

.Paragraph 4 of their petition states: "This action seeks to correct the birth certificates which were improperly and/or fraudulently altered to change the name of the plaintiff's [sic] mother and father." In the final paragraph of the petition, the plaintiffs’ request that "this Court order a Writ of Mandamus commanding the State Registrar and Director of Vital Records Registry to correct the improper alteration to the plaintiffs’ birth certificates.”